**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0172-15T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LEE H. CALHOUN,

    Defendant-Appellant.

_____

Submitted May 3, 2017 — Decided June 13, 2017

Before Judges Accurso and Lisa.

On appeal from Superior Court of New Jersey,
Law Division, Ocean County, Indictment Nos.
13-05-1342 and 14-02-0372.

Joseph E. Krakora, Public Defender, attorney
for appellant (Jay L. Wilensky, Assistant
Deputy Public Defender, of counsel and on the
briefs).

Christopher S. Porrino, Attorney General,
attorney for respondent (Sara M. Quigley,
Deputy Attorney General, of counsel and on the
brief).

PER CURIAM

After his suppression motion was denied, defendant pled guilty, pursuant to a plea agreement, to one count in Indictment No. 13-05-1342, namely Count Five, first-degree possession with intent to distribute a controlled dangerous substance, cocaine, N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(1). Defendant was sentenced to ten years' imprisonment with a parole disqualifier of twenty-eight months.[1] Pursuant to the plea agreement, the six remaining counts of the indictment were dismissed. The court also imposed all mandatory assessments and penalties.

The sole issue before us in this appeal is whether the trial court erred in denying defendant's motion to suppress evidence seized as a result of a warrantless search incidental to a motor vehicle stop. More particularly, defendant argues:

> POINT I
>
> NEITHER THE STOP NOR THE PATDOWN SEARCH WAS ADEQUATELY SUPPORTED. BECAUSE THE INTRUSION WAS ILLEGAL, THE RESULTS OF THE STOP AND SEARCH MUST BE SUPPRESSED. U.S. CONST., AMENDS. IV, XIV; N.J. CONST. (1947), ART. I, PAR. 7.

---

[1] At the time of sentencing, defendant was also sentenced under Indictment No. 14-02-0372 for an unrelated drug offense, which was committed approximately two months after the offense that is the subject of this appeal. The two offenses were encompassed in the same plea agreement. Pursuant to the terms of that agreement, defendant was sentenced under Indictment No. 14-02-0372 to seven years' imprisonment, to be served concurrently with the sentence imposed on the offense that is the subject of this appeal.

> A. The Initial Stop Was Not Supported By the Requisite Particularized Suspicion.
>
> B. The Pat-Down Search of the Defendant Was Likewise Insufficiently Supported.

We reject defendant's arguments and affirm.

At the suppression hearing, the State presented the testimony of the two Toms River police officers involved in the motor vehicle stop, Shawn Ruiz and Joshua Kuhlwein. The State also produced a Toms River Police Department K-9 officer, Stephen Eubanks, whose testimony is not germane to the arguments defendant raises in this appeal. Defendant did not testify or present any witnesses. The evidence established the following relevant facts.

On November 30, 2012, at approximately 9:45 p.m., Ruiz was conducting a surveillance of a 7-Eleven store parking lot in Toms River, in an area known for high drug activity, with particular relationship to a nearby motel. In the previous eleven months, Ruiz had conducted more than sixty investigations or drug related arrests in that area. While conducting the surveillance, he observed a vehicle pull into the parking lot and park. The driver remained in the vehicle. As the vehicle was pulling in, Ruiz observed that the driver's side and passenger side windows were tinted.

A man approached the vehicle and entered the passenger side. About ten seconds later, that individual exited the vehicle and

walked toward the motel we previously referenced. The car then backed out of the parking lot. As it did so, Ruiz confirmed his previous observation that the windows were tinted. He followed the vehicle and effected a motor vehicle stop. He called dispatch and reported his location and anticipated the arrival of a back-up officer.

While still alone at the scene, Ruiz approached the driver's side of the vehicle. He further observed that the windows were "heavily tinted." He made contact with the driver, later identified as defendant, who remained in the car. He informed defendant that he was stopped because of the tinted windows. Defendant was very agitated in his demeanor, and his hands were shaking as he handed Ruiz his driver's license.

During this interaction, Ruiz detected a strong odor of raw marijuana emanating from inside defendant's vehicle. He also observed multiple air fresheners placed inside the vents of the vehicle, which, from his training and experience, Ruiz knew was a common method used to mask the odor of illegal substances inside a vehicle. Because of the smell of marijuana, Ruiz told defendant of the observations he made in the 7-Eleven parking lot.

Kuhlwein arrived as the back-up officer, and he approached the passenger side of defendant's car. Because of the heavy tint of the front passenger side window, Ruiz requested that defendant

lower that window to enable Kuhlwein to observe the conversation. This measure was also taken for police safety. With the passenger window lowered, Kuhlwein also detected the odor of marijuana emanating from inside the vehicle.

At Ruiz's request, defendant exited the vehicle. Defendant continued to act in an agitated manner, constantly placing his left hand near his left pocket and on several occasions placing his hand in that pocket. He was postured in a manner which, as Ruiz described it, "to be somewhat . . . bladed away from me in such a stance where I thought that [defendant] may possibly run away from me or charge at me." Kuhlwein made similar observations.

Ruiz asked defendant if he had anything dangerous or illegal on him, to which defendant answered in the negative. For purposes of officer safety, Ruiz conducted a pat down of defendant to search for weapons. He "immediately felt a hard object which [he] recognized to be possibly a knife." He removed the object, which was a folding knife. He then directed defendant to sit in the back seat of his patrol car. The two officers then spoke with each other confirming that they each smelled the odor of marijuana, and it was determined that they should request a consent to search the vehicle.

Ruiz asked defendant for his consent, which he refused. After further discussion, defendant continued to withhold his consent

A-0172-15T3

to search. Ruiz then placed him under arrest, handcuffed him, and conducted a full search of his person incident to the arrest. He recovered more than $2000 in currency from his pockets.

The officers then had defendant's vehicle towed to the Toms River Police Department, and Ruiz transported defendant to the police department as well. The K-9 officer we previously mentioned, Eubanks, utilized a drug-sniffing dog to conduct a dog sniff of the outside of the vehicle. The dog indicated positively. Ruiz prepared an application for a search warrant, which was issued. A subsequent search of the vehicle revealed the presence of cocaine, marijuana, oxycodone, and drug distribution paraphernalia.

After the conclusion of the hearing, the attorneys submitted supplemental briefs. Judge James M. Blaney then issued a written decision on August 15, 2014. Based upon the testimony he heard and his observation of the witnesses, he made factual findings consistent with the recitation of facts which we have set forth. He found that the initial motor vehicle stop was justified based on Ruiz's reasonable belief that a motor vehicle violation occurred based on the tinted windows. Because of the smell of marijuana coming from inside defendant's vehicle, the judge further found that the officers were justified in extending the investigation beyond the original purpose of the stop. He further found the pat

search of defendant permissible because the events and circumstances leading up to it provided a sufficient basis for a protective search. In his remaining findings, which are not related to this appeal, the judge concluded that the search of defendant's person and vehicle were valid, and he accordingly denied the suppression motion.

Our review of a trial court's decision on a suppression motion is circumscribed. We must defer to the trial court's factual findings as long as those findings are supported by sufficient credible evidence in the record. State v. Elders, 192 N.J. 224, 243 (2007). A reviewing court should especially "give deference to those findings of the trial judge which are substantially influenced by his opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." Id. at 244 (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). Those findings should only be disregarded when they are clearly mistaken. State v. Hubbard, 222 N.J. 249, 262 (2015) (citing Johnson, supra, 42 N.J. at 162). "A trial court's findings should not be disturbed simply because an appellate court 'might have reached a different conclusion were it the trial tribunal.'" State v. Handy, 206 N.J. 39, 44-45 (2011) (quoting Johnson, supra, 42 N.J. at 162).

From our review of the suppression motion record, we are satisfied that Judge Blaney's factual findings are amply supported by sufficient credible evidence. Those findings were based on his assessment of the demeanor of the witnesses as they testified and his feel of the case. Accordingly, we defer to those factual findings.

In his first argument, defendant contends that the initial stop was not supported by the requisite particularized suspicion. Like Judge Blaney, we reject this argument. Fundamentally, investigatory stops of motor vehicles by police officers are justified if based upon a reasonable articulable suspicion that a motor vehicle violation has occurred. Delaware v. Prouse, 440 U.S. 648, 663, 99 S. Ct. 1391, 1401, 59 L. Ed. 2d 660, 673 (1979). The stop in this case was based upon Ruiz's belief that defendant violated N.J.S.A. 39:3-74, which provides in relevant part:

> No person shall drive any motor vehicle with any sign, poster, sticker or other non-transparent material upon the front windshield, wings, deflectors, side shields, corner lights adjoining windshield or front side windows of such vehicle other than a certificate or other article required to be so displayed by statute or by regulations of the commissioner.

> No person shall drive any vehicle so constructed, equipped or loaded as to unduly interfere with the driver's vision to the front and to the sides.

We have interpreted this provision to prohibit windows that are so darkly tinted as to interfere with a driver's vision. State v. Cohen, 347 N.J. Super. 375, 380 (App. Div. 2002). Judge Blaney credited Ruiz's testimony that the windows of defendant's car were heavily tinted. Ruiz testified that while conducting his surveillance of the 7-Eleven parking lot, he could not see inside of the car. At the site of the stop, when Kuhlwein arrived, it was necessary to lower the passenger side window in order to enable him to see inside the car.

Thus, the record supports the conclusion that a reasonable articulable suspicion existed that defendant violated N.J.S.A. 39:3-74. Whether defendant was actually guilty of violating this statute is not dispositive. State v. Williamson, 138 N.J. 302, 304 (1994).

We next address defendant's second argument, that the pat down search was insufficiently supported by a reasonable belief that defendant was armed and dangerous. To determine whether the officers possessed such a reasonable suspicion, we must evaluate the totality of the circumstances.

From the initial interaction with Ruiz, defendant acted in an agitated manner. This, standing alone, is not of great significance because many motorists stopped by a police officer might act in such a manner. However, the smell of raw marijuana

9

not only gives rise to a reasonable suspicion of criminal conduct, but provides the basis for probable cause of such conduct. State v. Judge, 275 N.J. Super. 194, 202-03 (App. Div. 1994). Ruiz was also possessed of the knowledge of his observations in the 7-Eleven parking lot. Based upon his training and experience and the character of the neighborhood, he suspected that a drug transaction occurred when an individual entered the car, only to leave after ten seconds and then proceed toward the motel which was known for drug activity. Finally, defendant exhibited potentially aggressive behavior after he got out of his car, including the movements of his left hand into and out of his left pocket.

A police officer is permitted to conduct a limited search of an individual's outer clothing if he reasonably believes the individual is armed and dangerous and might pose a danger to himself or others. Terry v. Ohio, 342 U.S. 1, 30, 88 S. Ct. 1868, 1884-85, 20 L. Ed. 2d 889, 911 (1968). We agree with Judge Blaney's conclusion that this standard was very well supported by the record, thus justifying a protective pat search of defendant.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

10